## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 29 2020, 10:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Michael L. Carmin
Daniel M. Cyr
CARMINPARKER, PC
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

John R. McKay
Samantha M. Paul
Jack R. Woodruff
Hickman & Lorenz, P.C.
Spencer, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Estate of
James Wilke (Deceased),

Melissa Wilke-Ware,

*Appellant*,

v.

Barbara Mohr as Personal
Representative of the Estate of
James Wilke,

*Appellee*.

April 29, 2020

Court of Appeals Case No.
19A-EU-2144

Appeal from the Owen Circuit
Court

The Honorable Lori Thatcher
Quillen, Judge

Trial Court Cause No.
60C01-1510-EU-40

**Brown, Judge.**

[1] Melissa Wilke-Ware appeals the trial court's interlocutory order ordering the sale of certain real estate. We reverse and remand.

## Facts and Procedural History

[2] James Wilke died on October 7, 2015. On October 21, 2015, Barbara Mohr filed a petition for the appointment of personal representative for unsupervised administration.

[3] On July 11, 2017, Personal Representative Mohr, Melissa, and Robert Wilke executed an Agreement as to Real Estate. The agreement stated "[t]his contract for sale is made . . . by and between" Mohr, as Personal Representative, Melissa, and Robert. Appellant's Appendix Volume II at 14. The agreement stated that Melissa and Robert are the sole heirs of James Wilke, the estate included a residence and real property in Poland, Indiana, and there existed a mortgage lien on the property which was current.[1] The agreement provided Melissa and Robert "wish[ed] to receive the residence and property as opposed to selling the property and sharing equally in the proceeds" and "[i]n furtherance thereof the parties agree as follows": Melissa and Robert shall timely pay all payments on the mortgage, taxes and assessments, and insurance premiums; they "shall share equally in the the [sic] above stated payments"; Melissa "shall have as her own the residence" and be responsible for costs related to the residence; Robert "shall have as his own the apartment located in

---

[1] The accounting attached to Mohr's September 21, 2017 petition to close estate lists amounts of $200,000 for the real property and $171,000 for liens, mortgages, bonds, and notes.

the out-building" and be responsible for all related costs; and each shall have the right to privacy and quietude in their homes. *Id.* at 14-15. The agreement further provided:

> H. Each party shall respect the others [sic] rights to their respective homes. The curtilage, buildings not mentioned, and the land shall be enjoyed by both parties equally and in full.
>
> I. Upon the final payment the parties shall receive an executor's deed. Melissa A. Wilke and Robert R. Wilke shall be jointly responsible for the preparation and recording of the deed and any and all other responsibilities and costs attendant thereto.
>
> J. In the event either party defaults upon their respective duties or obligations the other party may petition the Court to sell the real estate with the parties sharing equally crediting any deficiencies paid by the petitioning party. Further, the petitioning party has the option to buy the other out, once again crediting any deficiencies paid by the petitioning party.

*Id.* at 15.

[4] On September 21, 2017, Mohr filed an Agreed Verified Petition to Close Estate which was signed by Mohr, Melissa, and Robert and provided:

> 4. This dispersal includes the deposition [sic] of the real property located at . . . Poland, IN . . . . In that the heirs, decedent's only children, wish to keep and share the home and being that neither heir is in a position to finance the purchase of the real estate, said dispersal is by the attached Agreement as to Real Estate.
>
> 5. That all fees, bills, and debts of decedent have been paid. This includes but is not limited to the funeral expenses and costs of the estate's administration. Excepted is the mortgage upon said real estate which is being paid per the attached Agreement as to Real Estate.

6. The sole heirs, Melissa Wilke and Robert R. Wilke, agree to the closing of the estate as indicated by their signatures below.

7. All parties understand that the estate may be reopened under the circumstances set out in the Agreement as to Real Estate.

8. Parties request that Barbara Mohr be relieved of her duties as Personal Representative and that, for the record, Melissa A. Wilke-Ware and Robert R. Wilke be named as co-personal representatives.

*Id*. at 12-13. On October 25, 2017, the court issued an order stating the parties appeared and it had heard evidence, approving of the Agreement as to Real Estate, and closing the estate.

On December 5, 2018, Mohr filed a petition to reopen the estate which stated:

3. That the prior administration of the decedent's estate did not fully administer upon all of the decedent's assets in that the personal representative, upon advice and counsel, did not make disposition of the decedent's real estate but entered into an Agreement As To Real Estate with the decedent's heirs Melissa A. Wilke and Robert R. Wilke which was submitted to the court as part of the closing of the estate but which left title to the real estate in the decedent's name and the mortgage thereon outstanding.

4. That the personal representative is aware that the relationship between heirs Melissa A. Wilke and Robert R. Wilke with respect to sharing the real estate, maintaining the property and paying the mortgage and managing the personal property has become contentious, unworkable and untenable leaving the real estate at risk.

5. That because of the foregoing factors the administration of the estate needs to be re-opened in order that the personal representative may fully administer upon such matters.

6. That the personal representative believes it to be in the best interest of the decedent's estate that the Agreement As To Real Estate be set aside, the decedent's real estate be sold and the mortgage paid off, that any remaining

items of personalty located on the real estate be specifically distributed to the heirs or alternatively be sold for application toward costs of administration and or distribution to the heirs.

7. That because of the contentious relationship between heirs Melissa A. Wilke and Robert R. Wilke and your petitioner she verily believes that the administration of the estate needs to be under the Indiana probate code governing supervised administration in anticipation of the need for court assistance in moving forward toward full administration of the decedent's assets.

WHEREFORE, petitioner Barbara E. Mohr prays the Court for an order reopening the estate of James Wilke and re-appointing the petitioner as personal representative under supervised administration in order to fully administer upon the decedent's real estate, personalty and related matters as identified hereinabove, and for all other relief which is proper in the premises.

*Id.* at 19-20.

That same day, the court issued an Order Authorizing Reopening Estate Under Supervised Administration stating in part:

[T]he Court, having examined the petition and being fully advised in the premises, now finds the allegations stated in the petition are true; that certain assets of the decedent have not been fully administered upon and are at risk.

That the estate should be reopened and the personal representative reappointed under the probate code governing supervised administration in order [to] sell the decedent's real estate, pay the outstanding mortgage in the decedent's name, to complete administration upon any remaining personally and otherwise fully administer the decedent's estate.

IT IS THEREFORE ORDERED AND ADJUDGED by the Court that the estate of James Wilke is reopened and that Barbara E. Mohr is hereby reappointed personal representative of the estate under the probate code governing supervised administration upon taking an oath and that the Clerk

of the Court be, and hereby is directed to issue Letters of Administration to Barbara E. Mohr under supervised administration upon her qualification as the personal representative.

*Id*. at 23.

[7] On April 5, 2019, Mohr filed a Request for Hearing for Purposes of Instruction with Respect to Unresolved Issues of Administration. Mohr's request stated the decedent's real property was not transferred or conveyed from the decedent's name; the mortgage lien on the property in favor of Peoples State Bank remained outstanding in the decedent's name; she had agreed to the Agreement as to Real Estate not realizing it failed to fully address her responsibility to administer the estate; she had been advised by Peoples State Bank that it will not permit the decedent's heirs to assume the decedent's mortgage loan but will not treat the conveyance of title to the property to the heirs without paying off the loan as a default so long as the loan remains current; and she was seeking instruction regarding conveyance of title to the heirs without settlement of the mortgage lien.

[8] On May 10, 2019, Robert filed a Motion for Sale of Real Estate requesting that the court order the sale of the real estate and the profits be distributed. He alleged Melissa defaulted in her obligations under the Agreement as to Real Estate as she failed to timely pay her half of the mortgage payments and insurance premiums and has violated the covenant of privacy and quietude.

[9] On July 8, 2019, the court held a hearing at which Mohr, Robert, and Melissa appeared with their attorneys. Robert's counsel stated "I think we are in

agreement that the real estate should be sold," "[t]he agreement, I think everybody will agree has not worked out," the property and mortgage are in the name of the decedent, and the personal representative should be the person to sell the property. Transcript Volume II at 5. Melissa's counsel stated "we shouldn't be here today," "[t]here is nothing for the Court to do," "[t]here is an agreement that disbursed piece of real estate that's titled to the decedent to Robert and Melissa," the petition "filed by the PR says that when the mortgage is paid in full we will give you deed," and "[t]hat is the only thing left to be done." *Id*. at 6. Mohr's counsel stated the agreement indicated the heirs would take possession of the real property but did not disburse or convey title to them, that subparagraph I of the Agreement as to Real Estate specifically states that an executor's deed will be issued to convey title once the mortgage is paid off, the property remains in the decedent's name, the property was still an estate asset, and the estate should never have been closed without fully administering all of the assets. Melissa's counsel replied that the real property had been dispersed, "[i]t is a done deal," and "[t]he PR has got involved in something that she has no business being involved in." *Id*. at 8-9.

[10] Robert's counsel responded that the Agreement as to Real Estate specifically contemplates that, if either party defaulted, the other party may petition the court for sale of the property. He noted the court had already reopened the estate. He stated: "If the Court wishes to take testimony showing that there has been a default in the obligations I suppose we could do that but I really don't think there is any dispute over that. Everybody agrees payments have been late,

they don't get along, there's all sorts of problems out there and therefore the sale of the real estate must occur." *Id.* at 9. He said that he was surprised the court approved the agreement and that the case was reopened "because the agreement failed and that means we are back under the umbrella of the estate and to do this thing right we need to proceed under the estate, have a personal rep's deed, have the mortgage resolved, have a final accounting done, the things that should have been done at the time." *Id.* at 10.

[11] The court stated that it adopted the agreement because the parties had agreed it was in the best interest of the estate and everyone else at the time, the agreement contemplated an executor's deed upon final payment, and the reality was that the property was still held by the estate. Melissa's counsel then stated that paragraph J of the agreement said that a party, not the personal representative, may petition the court for a sale. Robert's counsel replied that Mohr was a signatory and party to the agreement. Melissa's counsel stated "the fight we are going to have in it is she cannot control the sale, she cannot control the price, she is not going to get any fees and expenses paid out of the estate over objection and you are setting this up for further fights when this [has] already been resolved." *Id.* at 11-12. Robert's counsel noted that Robert had petitioned for sale of the real estate and asked the court to authorize the personal representative to obtain a listing recommendation as to the amount and to proceed with the sale. The court stated, "I think we need to get an appraised value and see where the parties go from there and it needs to be resolved, it needs to be done." *Id.* at 12. The court asked "[d]o you need more

time or how do you wish to proceed," and Melissa's counsel stated "I am going to ask . . . for certify order for interlocutory appeal." *Id*. at 13.

[12] Melissa filed an objection stating in part "[t]he Agreement never defines 'party', but [] paragraphs H and J clearly contemplate Melissa and Robert as being the only two parties and, therefore, the only persons empowered to petition the Court for sale of the real estate." Appellant's Appendix Volume II at 32.

[13] On August 2, 2019, the court issued an order providing in part:

> This cause came before the court on July 8, 2019 regarding [Mohr's] *Request For Hearing For Purposes Of Instruction To Personal Representative With Respect To Unresolved Issues Of Administration* filed herein on April 5, 2019 and Robert Ryan Wilke's *Motion For Sale Of Real Estate* filed herein on May 10, 2019. . . .
>
> * * * * *
>
> 4. The parties agreed at the hearing that the real estate should be sold and that the Personal Representative should complete her administration of the estate pursuant to statute under supervision of this Court.
>
> 5. The Agreement As To Real Estate contemplated that an executor's deed would be issued upon final payment and the agreement was, therefore, executory.
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the Personal Representative sell the real estate and improvements at . . . Poland, Indiana . . . as promptly as possible. The Personal Representative is authorized to list the property with a realtor at the price recommended by that realtor, to pay the normal commission for the realtor's services and to authorize payment of all necessary closing costs and expenses.

*Id*. at 10.

## *Discussion*

[14] The trial court's findings control as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). First, we determine whether the evidence supports the court's findings of fact, and then we determine whether the findings support the court's conclusions. *Id.* Findings are clearly erroneous when the record contains no facts to support them. *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.*

[15] Melissa argues the court did not hear any evidence that she was in default under the Agreement as to Real Estate, she never agreed to a sale controlled by the personal representative, and she is not in default under the Agreement as to Real Estate. She argues that, "[i]f the trial court had heard evidence—as it should have done—[she] was prepared to testify that she and [Robert] formed a plan to carry out the monthly mortgage payments that are required under the Agreement," Robert "agreed to write a check to the mortgage company for the full amount of the mortgage payment each month, and [she] agreed to cut a check to [Robert] to pay her half," and she "was prepared to present evidence that she made her payment to [Robert] each month within the 'grace period' allowed by the mortgage company—that is, before any default could be declared by the mortgage company." Appellant's Brief at 13. She argues the trial court "simply assumed that a default exists." *Id.*

[16]     Personal Representative Mohr asserts the Agreement as to Real Estate did not

satisfy the requirements of Ind. Code § 29-1-7.5-4,[2] that her petition to reopen

the estate requested that the agreement be set aside, that the court's order

reopening the estate included the language "in order [to] sell the decedent's real

estate," and the Agreement as to Real Estate was void ab initio.  Appellee's

Brief at 12 (citing Appellant's Appendix Volume II at 23).  She argues the

agreement did not "recount that a personal representative's deed had been

prepared, executed, and recorded for the decedent's real estate," the real

property and mortgage remained in the name of the decedent, and the

agreement "somewhat curiously provided that at some future time, the heirs

would be responsible for preparation of an executor's deed necessary to convey

the title to the real estate from the decedent to themselves." *Id.* at 10.  She

argues the December 5, 2018 order was not appealed, and that she, Robert, and

Melissa were present in person at the July 8, 2019 hearing at which they each

by counsel summarized their respective views and positions.  She contends that,

because the Agreement as to Real Estate was rendered void ab initio, Melissa's

arguments concerning an evidentiary hearing are inapposite.  In reply, Melissa

asserts that Mohr did not raise her void ab initio argument before the trial court,

Ind. Code § 29-1-7.5-4 pertains to the actions of a personal representative in

---

[2] Ind. Code § 29-1-7.5-4 relates to the closing of estates in unsupervised administration proceedings and provides in part that a personal representative may close an estate by filing a verified statement stating that the personal representative has "(4) Executed and recorded a personal representative's deed for any real estate owned by the decedent."

submitting a closing statement and has no application to the Agreement as to Real Estate, and the estate was fully administered and properly closed.

[17] Ind. Code § 29-1-7.5-4(a) provides in part:

> Unless prohibited by order of the court and except for estates being administered in supervised administration proceedings, a personal representative may close an estate by filing with the court . . . a verified statement stating that the personal representative, or a prior personal representative, has done the following:
>
> * * * * *
>
> (3)     Fully administered the estate of the decedent by making payment, settlement, or other disposition of all claims which were presented, expenses of administration and estate, inheritance, and other death taxes, except as specified in the statement.  If any claims remain undischarged, the statement shall:
>
>   (A)     state whether the personal representative has distributed the estate, subject to possible liability, with the agreement of the distributees; or
>
>   (B)     detail other arrangements which have been made to accommodate outstanding liabilities.
>
> (4)     Executed and recorded a personal representative's deed for any real estate owned by the decedent.
>
> (5)     Distributed all the assets of the estate to the persons entitled to receive the assets. . . .

[18] Here, the July 11, 2017 Agreement as to Real Estate provided Melissa and Robert would pay the mortgage payments on the decedent's real property and, upon making the final payment, would receive an executor's deed.  The parties do not dispute that title to the property remained in the decedent's name and the decedent remained the named mortgagor on the mortgage.  The record does

not show that Personal Representative Mohr filed a verified statement that she "[e]xecuted and recorded a personal representative's deed for any real estate owned by the decedent." Ind. Code § 29-1-7.5-4(a)(4). We do not disturb the trial court's December 5, 2018 order reopening the estate.

[19] We turn to the trial court's order that the real estate be sold. We cannot say that the court's orders granting Mohr's requests to close and later reopen the estate rendered the Agreement as to Real Estate void. The Agreement as to Real Estate provided that, "[i]n the event either party defaults upon their respective duties or obligations the other party may petition the Court to sell the real estate with the parties sharing equally crediting any deficiencies paid by the petitioning party." Appellant's Appendix Volume II at 15. On May 10, 2019, Robert filed a Motion for Sale of Real Estate alleging that Melissa had defaulted in her obligations under the Agreement as to Real Estate by failing to timely pay her half of the mortgage and insurance premium payments and by violating the covenant of privacy and quietude. On July 8, 2019, the court held a hearing at which it heard arguments from counsel but did not admit evidence. While Robert's counsel stated the court could "take testimony showing that there has been a default in the obligations," "I really don't think there is any dispute over that," and "[e]verybody agrees payments have been late," *see* Transcript Volume II at 9, Melissa did not concede that she was in default under the Agreement as to Real Estate. Further, while Melissa's counsel argued that only Melissa or Robert may request the sale of the real estate under the Agreement as to Real Estate, the record does not demonstrate that Melissa agreed that the

real estate should be sold. Melissa's counsel stated there was nothing for the court to do, there was an agreement which disbursed the real estate, and the only thing left to be done is a deed when the mortgage is paid in full. The court did not admit evidence on Robert's Motion for Sale of Real Estate alleging that Melissa was in default under the Agreement as to Real Estate.

[20] Based upon the record, we reverse the trial court's order and remand for an evidentiary hearing on Robert's May 10, 2019 Motion for Sale of Real Estate.

[21] Reversed and remanded.

Riley, J., concurs.

Baker, J., concurs with separate opinion.

| | |
|---|---|
| In the Matter of the Estate of James Wilke (Deceased), <br><br> Melissa Wilke-Ware, <br><br> *Appellant*, <br><br> v. <br><br> Barbara Mohr as Personal Representative of the Estate of James Wilke, <br><br> *Appellee*. | Court of Appeals Case No. 19A-EU-2144 |

**Baker, Judge, concurring.**

I fully concur with the majority opinion. I write separately to add that if the evidence on remand reveals that Melissa was indeed in default, I urge the trial court to order that all resulting costs be borne by Melissa, rather than by the Estate. The conclusion and decision reached by the majority—that there is insufficient evidence demonstrating Melissa's alleged default and agreement to

the sale of the real estate—is largely, if not entirely, due to Melissa's own silence on the matter: "Melissa did not concede that she was in default" and "the record does not demonstrate that Melissa agreed that the real estate should be sold." Slip Op. p. 13-14. If, then, the evidentiary hearing does, in fact, show that Melissa defaulted on her obligations, it seems appropriate to place the onus on her to bear the costs incurred as a result of these prolonged proceedings.